UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELE JOANNE PLAIR,

    Plaintiff,

v.                                                                         Case No: 8:16-cv-2325-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Michele Joanne Plair, seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### **A.    Procedural Background**

Plaintiff filed an application for a period of disability on January 11, 2013. (Tr. 240.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 108–131.) Plaintiff then requested an administrative hearing. (Tr. 133.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 31–65.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 12–25.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–6.) Plaintiff then timely filed a

complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1971, claimed disability beginning on December 1, 2011. (Tr. 240.) Plaintiff has a limited education. (Tr. 24.) Plaintiff's past relevant work experience included work as a housekeeper and a janitor. (Tr. 58.) Plaintiff alleged disability due to kidney injury, left knee/falling out, back injury, and migraines. (Tr. 255.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since December 1, 2011, the alleged onset date. (Tr. 17.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis, status-post left knee surgery (meniscus tear), vision deficits due to glaucoma, migraine headaches, and obesity. (Tr. 18.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work, including the ability to occasionally lift and carry up to 50 pounds and frequently lift and carry up to 25 pounds. (Tr. 20.) The ALJ further found that Plaintiff can sit, stand, or walk, with normal breaks, for approximately six hours in an eight-hour workday. (Tr. 20.) The ALJ also concluded that Plaintiff can frequently climb, crawl, crouch, kneel, and stoop, and should have no more than a concentrated exposure to noise. The ALJ further limited Plaintiff to occupations that do not require frequent night vision. (Tr. 20.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce

the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 22.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a housekeeper or a janitor. (Tr. 23.) Further, given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a fast food worker, cashier, or cleaner. (Tr. 25.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 25.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-

related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to consider the combination of Plaintiff's severe and non-severe impairments in formulating Plaintiff's RFC; and, (2) the ALJ failed to provide sufficient reasoning for discounting the opinion of treating physician Dr. German Ramirez. For the reasons that follow, neither of these contentions warrant reversal.

**A.     The ALJ's Assessment of Plaintiff's RFC**

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's RFC. Specifically, Plaintiff argues that the ALJ "made no mention of Plaintiff's non-severe impairments or that such impairments were considered in conjunction with Plaintiff's severe impairments." (Dkt. 21 at 10.) Plaintiff contends that this error was not harmless because it occurred after step two of the sequential evaluation. (Dkt. 21 at 11.)

At step two of the evaluation process, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(c)). In this step of the sequential process, the claimant bears the burden of proof that he or she suffers from a severe impairment or combination of impairments. *Gibbs v. Barnhart*, 156 Fed. App'x 243, 246 (11th Cir. 2005). An impairment is not severe "only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability

to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "Basic work activities" include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1)–(6).

If an ALJ errs in finding that a claimant's *additional* impairments are non-severe, such error is harmless when the ALJ finds that a claimant has a severe impairment. *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 824–25 (11th Cir. 2010). This is because the ALJ has determined that step two of the analysis is met and proceeds in the disability analysis. *Id.*; *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. App'x 949, 951 (11th Cir. 2014); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

The ALJ is, however, "required to consider all impairments, regardless of severity, in conjunction with one another in performing the *latter steps* of the sequential evaluation." *Tuggerson-Brown*, 572 Fed. App'x at 951 (emphasis added). The ALJ's failure to consider the combination of a claimant's impairments requires reversal. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). As examples, an ALJ's statements that he considered whether claimant's impairment or combination of impairments met a Listing or that he considered all symptoms in determining claimant's RFC are sufficient "to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 Fed. App'x at 951 (finding the ALJ's discussion of the combined effects of claimant's impairments sufficient because the ALJ discussed the non-severe impairments in the ALJ's assessment of claimant's RFC); *Wheeler v. Heckler*, 784 F.2d 1073,

1076 (11th Cir. 1986) (emphasis in original) (quoting the ALJ and finding that it was "clear" that the ALJ considered claimant's impairments in combination because the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity'").

Here, at step two of the sequential evaluation process, the ALJ found that Plaintiff had severe impairments of osteoarthritis, status-post left knee surgery (meniscus tear), vision deficits due to glaucoma, migraine headaches, and obesity. (Tr. 18.) The ALJ also found that Plaintiff had non-severe impairments of chronic gastroesophageal reflux disease ("GERD"), hypertension, left ventricular hypertrophy ("LVH"), mixed dyslipidemia, history of transient ischemic attack ("TIA"), respiratory issues, gynecological issues, and past issues. (Tr. 18.) Thus, the ALJ found in Plaintiff's favor at step two and proceeded with the other steps of the sequential evaluation. Because the ALJ found that Plaintiff had severe impairments and thus proceeded beyond step two, any error in failing to find that Plaintiff suffers from additional severe impairments was rendered harmless. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 Fed. App'x 890, 892 (11th. Cir. 2013).

Further, at step three of the sequential process, the ALJ properly considered all of Plaintiff's relevant impairments and found that Plaintiff did not have "an impairment or combination of impairments that medically meets or equals" a listed impairment, which is sufficient to show that the ALJ considered the combined effect of Plaintiff's impairments. (Tr. 19); *Hutchinson v. Astrue*, 408 Fed. App'x 324, 327 (11th Cir. 2011) (finding the ALJ considered claimant's impairments of depression and anxiety, in combination, at step three where the ALJ specifically stated that claimant did not have an "impairment, individually or in combination" that met a listed impairment); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th

Cir. 1991) (concluding the ALJ considered the combined effect of claimant's impairments by stating that claimant does not have "an impairment or combination of impairments" equal to a listed impairment). Also, in considering Plaintiff's RFC, the ALJ stated that he had carefully considered "the entire record" and "considered all symptoms." (Tr. 20.)

Moreover, and contrary to Plaintiff's assertions, the ALJ addressed Plaintiff's non-severe impairments. The ALJ provided a detailed discussion of Plaintiff's medical history, including her non-severe impairments of respiratory issues, LVH, hypertension, GERD, history of stroke, and gynecological issues. (Tr. 18–19, 21.) Specifically, the ALJ noted that Plaintiff presented to the emergency room in August 2013 for respiratory symptoms. (Tr. 18, 554.) Notations indicate that Plaintiff was non-compliant with treatment. (Tr. 557.) Plaintiff reported no other complaints, and a physical examination was mainly within normal limits. (Tr. 556.) Further, results from an electrocardiogram and chest x-ray were negative. (Tr. 555–556.) Plaintiff was diagnosed with acute cough and hypertension. (Tr. 557.) In January 2014, Plaintiff was admitted to the hospital for chest pain with respiratory failure, hypertension, acute pulmonary edema, and bilateral pneumonia. (Tr. 504.) Her symptoms improved with aggressive management of her blood pressure and a Cardene drip. (Tr. 504.) The attending physician diagnosed her with chronic hypertension, remote history of stroke, and morbid obesity. (Tr. 504.) The ALJ further noted that Plaintiff was seen by a cardiologist between April and June 2014 who diagnosed her with hypertension with LVH. Plaintiff's treatment included medication and blood pressure monitoring. (Tr. 572–578.) The ALJ also noted that in 2014, Dr. Ramirez diagnosed Plaintiff with hypertension and obesity, but Plaintiff's physical examination throughout the course of her treatments found nothing significant other than obesity. (Tr. 19, 611–614.) Further, Plaintiff's treating physician Dr. Joseph Delgado diagnosed Plaintiff with mild GERD, gastritis, and shallow

gastric ulcers. (Tr. 640.) Dr. Delgado recommended Plaintiff follow-up as scheduled. (Tr. 640.) As discussed further below, the ALJ also addressed Dr. Ramirez's opinion that Plaintiff needs to take unscheduled breaks and Plaintiff's testimony that she must use the restroom every five or ten minutes. (Tr. 19, 21.)

Additionally, the ALJ's RFC assessment is supported by substantial evidence. For example, Plaintiff's physical examinations were generally normal, including a normal range of motion and normal strength, gait, balance, coordination, and breathing. (Tr. 429–430, 433, 435, 437, 491, 493, 577, 612, 622–623, 629, 634–635.) Her diagnostic tests results were generally normal as well. (Tr. 465, 470, 497, 588–590, 625.) In April 2014, her hypertension was described as "benign." (Tr. 623.) In July 2014, Plaintiff reported feeling "pretty good" and her physician affirmed that she was doing very well." (Tr. 612.) Further, Plaintiff testified that in 2013 and 2014, she was able to work part-time as a housekeeper. (Tr. 39–40.) This evidence indicates that Plaintiff is able to perform medium work with the additional limitations the ALJ provided in the RFC assessment.

In sum, the ALJ sufficiently considered whether the combination of Plaintiff's impairments rendered Plaintiff disabled because the ALJ considered all of Plaintiff's impairments, severe and non-severe, at steps three and four of his analysis. Further, upon review of the evidence, the ALJ's RFC finding is supported by substantial evidence. Accordingly, Plaintiff's first contention does not warrant reversal.

**B.     Dr. Ramirez**

Plaintiff next contends that the ALJ did not provide sufficient reasoning for discounting the opinion of treating physician Dr. Ramirez. (Dkt. 21 at 16.) Dr. Ramirez completed a kidney residual functional capacity questionnaire for Plaintiff on January 28, 2015. (Tr. 659–664.) Dr.

Ramirez diagnosed Plaintiff with hypertension and hypercholesterolemia, including symptoms of high blood pressure, migraine headaches, back pain, and swollen feet. (Tr. 659.) Dr. Ramirez further opined that Plaintiff has urinary incontinence and frequency due to water pills, and that her symptoms are improved by not drinking liquids, worsened by the intake of fluids, and further noted that Plaintiff needs to keep hydrated. (Tr. 660–662.) Dr. Ramirez concluded that Plaintiff needs ready access to a restroom and will need to take unscheduled restroom breaks during an eight-hour workday, but could not determine how many breaks she will need. (Tr. 662.) Plaintiff contends that Dr. Ramirez's opinion regarding Plaintiff's urinary incontinence and frequency is significant because the VE testified that excessive restroom breaks would preclude competitive standards of performance over a sustained period of time. (Dkt. 21 at 15.)

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 Fed. App'x 960, 962 (11th Cir. 2015). Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 Fed. App'x 875, 877–78 (11th Cir. 2013).

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 Fed. App'x 892, 895

(11th Cir. 2015). The medical opinions of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179.

Here, the ALJ specifically addressed Dr. Ramirez's opinion and assigned it minimal weight.[1] (Tr. 23.) The ALJ reasoned that Dr. Ramirez's opinion is not supported by his own clinical and objective findings and that the other medical evidence renders the opinion less persuasive. (Tr. 23.) The ALJ further noted that Dr. Ramirez's treatment notes reveal no evidence of a disabling impairment, restrictions, or limitations from a physical standpoint. (Tr. 23.) The ALJ also noted that Plaintiff reported that she could do more than Dr. Ramirez reported. (Tr. 23.)

The ALJ's assignment of minimal weight to Dr. Ramirez's opinion is supported by substantial evidence. First, Dr. Ramirez's opinion is not supported by his own medical records. Dr. Ramirez's treatment notes do not include any discussion of Plaintiff's migraine headaches, back pain, swollen feet, or urinary frequency. (Tr. 611–614.) Further, as admitted by Plaintiff, there is no other record evidence to support Plaintiff's urinary frequency or incontinence due to her water pill. (Dkt. 21 at 16.) Plaintiff argues that the ALJ failed to cite any contrary evidence that would support a finding that Plaintiff does not experience urinary frequency or incontinence due to her water pill. (Dkt. 21 at 16.) However, the record reflects that Plaintiff affirmatively denied the presence of urinary frequency or urgency in July and October 2014. (Tr. 629, 634.) Thus, the evidence supported a contrary finding, and good cause existed for the ALJ to decline to

---

[1] The ALJ mistakenly refers to Dr. Ramirez as Dr. Rodriguez. However, the ALJ does cite to the correct exhibit numbers for Dr. Ramirez's records, Exhibits 6F and 8F.

afford Dr. Ramirez's opinion substantial or considerable weight. *Phillips*, 357 F.3d at 1241. Accordingly, because the ALJ did not err in assigning Dr. Ramirez's opinion minimal weight, Plaintiff's final contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on August 9, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record